STATE of Tennessee, Appellee,

v.

**Lindsey Keith TAYS, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

April 16, 1992.

James R. Omer, Terrance E. McNabb, Nashville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Bettye Springfield–Carter, Asst. Atty. Gen., Victor S. Johnson III, Dist. Atty. Gen., Dan Hamm, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

SUMMERS, Judge.

Appellant, Lindsey Keith Tays, appeals pursuant to Rule 37(b)(1)(i), Tenn.R.Crim.P. The singular issue presented is whether the trial court erred in refusing to suppress evidence seized pursuant to the warrantless arrest of the appellant and the subsequent search of his vehicle. After the trial court's ruling on the suppression issue, the appellant entered a plea of guilty to the charge of possession of a Schedule II controlled substance with intent to deliver or sell. Finding no error, we affirm the judgment of the trial court.

Craig Jones, an officer with the Metropolitan Police Department, testified that he received information from an informant that a man was supplying large amounts of Dilaudid to dealers throughout the city of Nashville. The informant explained to the officer that this individual would routinely travel to Chicago one weekend a month and bring back a large quantity of the drug. At the time this information was given to Officer Jones, the informant only identified this individual by the name of Keith.

Later in that same week, the informant told Officer Jones that the individual named Keith had gone to Chicago and would be returning to the Nashville airport sometime on Sunday, May 21, 1989. The informant also provided the officer with Keith's telephone number. The following day Officer Jones investigated this telephone number with the telephone company and learned that the number was listed to Lindsey Keith Tays (the appellant). The informant described Keith's appearance as being about the same height, build, and hair color as Officer Jones. The informant indicated that Keith had no facial hair.

After obtaining appellant's name by tracking his telephone number, Officer Jones determined that the police department had a photograph of the appellant in its records. Upon inspection, Officer Jones noticed that this photograph showed the suspect with a very bushy mustache, which was different from the information he had received from his informant. However, the officer did not have the means of contacting his informant in order to verify the picture. Upon further investigation, Officer Jones learned that the only automobiles registered in appellant's name were at the appellant's house on May 20th. Since the appellant was, according to his informant's information, supposed to have been arriving on Sunday morning, Officer Jones and another officer went to the airport to check the flights arriving from Chicago. Two officers were placed on surveillance at the appellant's residence in case appellant's

wife left to pick up her husband at the airport.

Officer Jones checked with airport security in order to ascertain whether an individual by the name of Lindsey Keith Tays or Keith Tays had reservations on any flight from Chicago, but the appellant apparently did not use his own name on the reservations. Some time prior to the arrival of the last flight from Chicago for that Sunday morning, Officer Jones received word that the appellant's wife had left the house and was in the general vicinity of the airport. When the appellant exited the plane, the officer accompanying Officer Jones was not sure whether to follow the appellant because appellant was wearing a mustache, unlike the description given by the informant. However, as soon as Officer Jones saw the appellant, he noticed the similarities between the appellant and his picture at the police station. Officer Jones testified that he was not completely positive of the appellant's identity until the appellant got into the car with his wife. The officers trailed appellant onto a major highway in Nashville where they pulled him over and took him into custody. During the search of appellant's vehicle, the officers found a windbreaker jacket on the backseat of the car. This was the same windbreaker that the appellant had draped over his arm when he got off the airplane. Inside a zipped compartment of the jacket were two plastic bags containing 469 Dilaudids. Officer Jones testified that if they did not stop the appellant at that time, there was a possibility that the appellant would have gotten away and sold the pills or in some other way disposed of the contraband.

Officer Jones considered his informant to be reliable because the informant had previously given accurate information on other cases, some of them involving drugs. Although not exactly certain of which cases the informant had given earlier information, Jones recalled at least one drug case where an arrest was made. He verified all the information obtained by the informant and did not doubt his informant's reliability. Jones did not initially believe the information he received to be sufficient to obtain a search warrant prior to the appellant's return to Nashville. However, when the appellant, while using an alias, returned on a flight from Chicago on May 21, 1989, the informant's information began falling into place. In order to be certain that the man they were following was in fact the appellant, the officers waited until he got into a car registered in his name and driven by his wife. At that time Officer Jones felt that he had sufficient probable cause to arrest the appellant.

An officer may, without a warrant, arrest a person "[o]n a charge made, upon reasonable cause, of the commission of a felony by the person arrested." T.C.A. § 40–7–103(4). Thus, the decisive question for this Court is whether the information received by the officers gave them "probable cause" within the meaning of the Fourth Amendment, and "reasonable cause" within the meaning of T.C.A. § 40–7–103, to believe that the appellant had committed or was in the process of committing a felony. See *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). "If it did, the arrest, though without a warrant, was lawful and the subsequent search of [appellant's automobile] and the seizure of the found [Dilaudid] were validly made incident to a lawful arrest, and therefore the motion to suppress was properly overruled...." *Id.* at 310–311, 79 S.Ct. at 331–332. The Tennessee Supreme Court does not differentiate between the term "reasonable cause" and the term "probable cause" when analyzing the validity of a warrantless arrest. See *State v. Melson*, 638 S.W.2d 342 (Tenn. 1982). In any event probable cause is the stricter standard; and if the officers had probable cause, then the arrest was valid. In this regard, our Supreme Court has stated as follows:

> Since there was no warrant, we must pass upon the validity of the arrest under the statute permitting an officer to make a warrantless arrest when a felony has been committed and he has reasonable or probable cause to believe that the arrestee committed the felony. [Citation omitted]. It is conceded that probable cause

must be more than mere suspicion, *West v. State*, 221 Tenn. 178, 425 S.W.2d 602 (1968), but neither must it be absolute certainty, *Grey v. State*, 542 S.W.2d 102 (Tenn.Cr.App.1976). Reasonable or probable cause consists of grounds which would lead a reasonable man to believe that the person arrested was guilty of the felony, *Davis v. State*, 2 Tenn.Cr. App. 297, 453 S.W.2d 438 (1969). In *Davis*, we quoted from *Jones v. State*, 161 Tenn. 370, 33 S.W.2d 59 (1930), wherein it was stated:

"In *Beck v. State of Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), the [United States Supreme] Court stated: 'whether the arrest was constitutionally valid depends ... upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed ... an offense.'"

*State v. Melson*, 638 S.W.2d at 350–351. On several occasions Tennessee courts have pointed out that "probable cause" is not a technical calculation, but a factual and practical consideration of everyday life upon which "reasonable and prudent men, not legal technicians, act." *State v. Melson*, 638 S.W.2d at 351; *State v. Kyger*, 787 S.W.2d 13, 21 (Tenn.Crim.App.1989); see also *Draper v. United States*, 358 U.S. at 313, 79 S.Ct. at 333.

■ *Draper v. United States* is factually similar to the instant case. In *Draper*, a federal narcotics agent was told by a reliable informant that the defendant, whom the agent did not know, was peddling narcotics. The defendant, according to the informant, had gone to Chicago to obtain a supply of heroin and would return on a certain train on a certain day or the following day. The agent met the train and recognized the defendant from the informant's description. Without a warrant, the agent arrested the defendant, searched him, and seized narcotics found in his possession. The contraband was later admit-

ted in evidence at trial, and the defendant was convicted of violating a federal narcotics law. The Supreme Court affirmed the conviction holding that the information provided by the confidential informant provided the agent with probable cause and reasonable grounds to believe that the defendant was committing a violation of the laws of the United States relating to narcotic drugs at the time of the arrest. *Id.* at 314, 79 S.Ct. at 333–334.

■ In the instant case, the only significant difference from the *Draper* case is that the informant's physical description of the appellant was not as detailed as the description in *Draper*. In the present case, however, Officer Jones did not find it necessary to completely rely on his informant's physical description of the appellant, because he had a photograph of the appellant on file at the police station. See *State v. Evetts*, 670 S.W.2d 640 (Tenn.Crim. App.1984).

■ The appellant argues that the same standard for questioning the validity of a search warrant should apply to the validity of this arrest. In support of this argument he relies on *State v. Jacumin*, 778 S.W.2d 430 (Tenn.1989). In that case, our Supreme Court adopted the two-pronged standard as stated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). This *Aguilar–Spinelli* test is the standard by which probable cause is measured to determine whether the issuance of a search warrant is proper under the Tennessee Constitution. The state contends that since this case does not involve the issuance of a search warrant by a magistrate, the *Aguilar–Spinelli* analysis is not applicable here. The Attorney General argues that different factors are considered when determining probable cause to make an arrest than when determining probable cause to issue a search warrant. It is true that in the case of an arrest, the analysis concerns the guilt of the arrestee, whereas in the case of a search warrant, the determination goes to the connection of the item

sought with the crime and to the items' present location. Certainly different factors are considered. However, appellant's argument that the test to determine probable cause to make an arrest should be equally as stringent as the test to determine whether probable cause exists to issue a search warrant, has merit in our opinion.

In *State v. Coleman,* this Court held that an investigative stop based entirely upon information received from a confidential informant requires a comparative application of the *Aguilar–Spinelli* probable cause standard. 791 S.W.2d 504, 505 (Tenn.Crim. App.1989). Certainly we should not allow a warrantless arrest to be made under circumstances less restricting than those required for an investigative stop. The *Aguilar–Spinelli* two-pronged test requires that an officer seeking a search warrant based upon information provided by an informant swear out an affidavit stating to the magistrate that the informant is not only credible but has a basis of knowledge of the underlying circumstances.

Our reasoning is buttressed by Rule 4 of the Tennessee Rules of Criminal Procedure. That rule states that a warrant for the arrest of an accused may be issued by a magistrate or clerk to any law enforcement official but only upon the showing that there is probable cause to believe that an offense has been committed and that the defendant has committed it. According to the rule, "[t]he finding of probable cause shall be based upon evidence, which may be hearsay in whole or in part provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Rule 4(b), Tenn.R.Crim.P. This probable cause requirement essentially encompasses the *Aguilar–Spinelli* two-pronged test adopted by our Supreme Court in *State v. Jacumin.* Furthermore, as stated by this Court in 1982, "[w]hile [Rule 4(b) ] applies itself particularly to warrants for arrest, the same principle must be considered to establish probable cause where an arrest has been made without a warrant." *State v. Rasp-*

*berry,* 640 S.W.2d 227, 228 (Tenn.Crim.App. 1982).

In the instant case Officer Jones explained to the trial court's satisfaction, and to ours, that the informant upon which he relied was credible. We also believe that the "basis of knowledge" prong of the test was met. The informant stated to Officer Jones that he had met the appellant and through this meeting learned that the appellant could supply large amounts of Dilaudid. Further, he learned that the appellant supplied Dilaudid to "big-time dealers" in Nashville. In an abundance of caution, Officer Jones and the officers assisting him attempted to verify all of the statements made by the informant. Everything occurred exactly as suggested by the informant. The appellant did arrive from Chicago on the night predicted by the informant. There was little question that the appellant was the man described by the informant. Additionally, the appellant did not use his real name on his airline ticket. By the time the facts provided by the informant were verified, the arrest had to be made immediately. Otherwise, the contraband could have been distributed before the officers could return with an arrest warrant.

For the foregoing reasons, the conviction is affirmed.

JONES and BIRCH, JJ., concur.