**STATE of Tennessee, Appellant,**

v.

**Rodney BROWN, Appellee.**

Court of Criminal Appeals of Tennessee, at Nashville.

Dec. 1, 1994.

Permission to Appeal Denied by Supreme Court Feb. 27, 1995.

Charles W. Burson, Atty. Gen. and Reporter, Charlette Reed Chambers, Criminal Justice Div., Nashville, W. Michael McCown, Dist. Atty. Gen., Weakley E. Barnard, Asst. Dist. Atty. Gen., Fayetteville, for appellant.

Raymond W. Fraley, Jr., Fayetteville, for appellee.

## OPINION

SUMMERS, Judge.

The appellee, Rodney Brown, was indicted in Lincoln County for possessing a controlled substance with intent to sell, obstructing an arrest, and attempting to destroy evidence. Appellee filed a motion to suppress all evidence seized from him while in custody. The trial court found that the investigatory stop which produced the evidence in question was not supported by reasonable and articulable suspicion and therefore granted the appellee's motion to suppress.

Because the trial court's suppression of the evidence against the appellee has the substantive effect of a dismissal, the state appeals pursuant to T.R.A.P. 3. The state contends that the investigatory stop of the appellee was supported by reasonable and articulable suspicion and that the evidence seized as a result of that stop should not have been suppressed. We agree with the state and respectfully reverse the judgment of the trial court.

## FACTS

The facts of this case are not in dispute. Younger Toone, an inmate of the Lincoln County Jail, returned to the jail from work release. A routine search of Toone revealed a small quantity of what appeared to be cocaine. Upon questioning, Toone indicated that he had purchased the drug from Brown. In exchange for a recommendation of lenient treatment, Toone agreed to assist the Sheriff's Department in arranging another "buy" from the appellee.

Detective Carlisle, an officer who was familiar with the appellee and his reputation as a drug dealer, was assigned to conduct the operation. Carlisle provided Toone with a telephone and instructed him to call and arrange a drug deal. Due to the secured

phone lines in the jail, Detective Carlisle was unable to listen to both sides of Toone's conversation. Recording equipment which would attach directly to the telephone either was not working properly or was unavailable. At any rate, Detective Carlisle heard Toone address the other party as "Rodney" and state that he needed a "gram." In drug parlance, "gram" is generally used in reference to cocaine.

Detective Carlisle debriefed Toone following the telephone conversation, and Toone indicated that he had arranged to meet Rodney Brown and purchase cocaine. Carlisle found the proposed location of the transaction unacceptable, however, and instructed Toone to call back and change the meeting place to a specified parking lot. Toone did so and requested that the drugs be delivered at a precise time.

At this point, Detective Carlisle made the determination that he would go and meet the appellee rather than make a "controlled buy" using Toone. He proceeded to the parking lot and waited for the appellee to arrive. At the appointed time, appellee approached the parking lot. Detective Carlisle recognized the appellee's vehicle and the appellee himself. The appellee slowed to a crawl but, upon seeing Carlisle, sped up and left the parking lot. Detective Carlisle then radioed for backup vehicles to stop the appellee.

When stopped, the appellee got out of his truck and gave the officers permission to search the vehicle. One of the officers noted that the appellee had his hands in his pockets and, fearing that he might have a weapon, ordered him to remove them. The appellee did so, and made a sudden movement toward his mouth. The officers then subdued the appellee and retrieved five bags of cocaine which were already partially in the appellee's mouth. Appellee was then placed under arrest.

## ISSUE

■ Because the contraband was in plain view when the officers seized it, the sole issue is whether the investigatory stop of the defendant was proper. If the stop itself is found to be constitutionally invalid, then the evidence must be suppressed. *Wong Sun v.*

*United States,* 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963).

■ The case law dealing with informants' tips has evolved primarily in the context of the probable cause required to support a search warrant. Unlike the issuance of a search warrant, an investigatory stop requires only a reasonable or articulable suspicion on the part of the officer. *E.g. Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Moore,* 775 S.W.2d 372 (Tenn.Crim.App.1989). While the reasonable suspicion required for an investigatory stop represents a lower quantum of proof than probable cause, probable cause analysis nonetheless informs our inquiry into the reasonableness of an investigatory stop. *State v. Coleman,* 791 S.W.2d 504 (Tenn.Crim.App. 1989).

■ In *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the United States Supreme Court held that to support a search warrant, an affidavit based on hearsay information must explain:

[S]ome of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed ... was "credible" or his information "reliable."

*Id.* at 114, 84 S.Ct. at 1514.

The two-prong framework established in *Aguilar* was restated in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *Spinelli* affirmed *Aguilar* and intimated that independent corroboration could sometimes substitute for an express statement of the basis of the informant's knowledge. *Id.*

When application of the *Aguilar–Spinelli* standard proved troublesome for lower courts, the Court abandoned it in favor of a "totality of the circumstances" approach. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "Probable cause," the Court opined, "is a fluid concept ... not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232, 103 S.Ct. at

2329. Tennessee, however, still adheres to the *Aguilar–Spinelli* standard. In *State v. Jacumin*, 778 S.W.2d 430 (Tenn.1989), the Tennessee Supreme Court stated:

> We agree ... that the principles developed under *Aguilar v. Texas*, ... and *Spinelli v. United States* ... if not applied hypertechnically, provide a more appropriate structure for probable cause inquiries incident to the issuance of a search warrant than does *Gates*. We are also of the opinion that the *Aguilar–Spinelli* standard, or test, is more in keeping with the specific requirement of Article 1, Section 7 of the Tennessee Constitution that a search warrant not issue "without evidence of the fact committed." Consequently, we adopt the two-pronged standard voiced in *Aguilar* and *Spinelli* as the standard by which probable cause will be measured to see if the issuance of a search warrant is proper under Article 1, Section 7 of the Tennessee Constitution.

*Id.* at 436.

## CONCLUSION

■ We find that the informant's tip in this case satisfied both requirements of the *Aguilar–Spinelli* standard. Toone's basis for knowledge is firmly established in that he claimed to have purchased drugs that same day from appellee and apparently arranged a second drug transaction. On the question of Toone's reliability, Detective Carlisle testified that he felt that Toone was unreliable and a liar. Carlisle's superiors, however, had received accurate information in the past from Toone concerning the presence and location of drugs in the jail. Carlisle was instructed that Toone's information was good and that he was to use Toone to arrange a "buy."

Any doubts Carlisle might have experienced concerning Toone's veracity were no doubt erased when the appellee came to the prearranged spot for the drug transaction at the exact time Toone had requested. The reason that Toone's description of the appellee was not more detailed is that further detail was unnecessary in this case. Toone had identified a particular individual who was well known to Officer Carlisle. When that individual arrived at the correct place and time for the drug deal, Toone's information was perfectly corroborated. In *State v. Tays*, 836 S.W.2d 596 (Tenn.Crim.App.1992), the arresting officer was uncertain of an individual's identity until he got into a car which the officer knew was registered in the suspect's name and driven by his wife. We held that at that point, with an informant's tip and the corroborating information observed on the scene, the officer had probable cause to make a warrantless arrest. *Id.*

Because we find that the informant's tip relied upon by Officer Carlisle, taken together with the corroborating circumstances, satisfies the more stringent *Aguilar–Spinelli* standard of probable cause, we hold that the information would also provide the reasonable suspicion required for a valid investigatory stop. We therefore reverse the trial court's decision to suppress the evidence against the appellee. We order that the state be allowed to proceed to trial using the evidence that was formerly suppressed.

**REVERSED.**

WADE and WELLES, JJ., concur.