IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 4, 2003

## STATE OF TENNESSEE v. OSCAR C. WELLS

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 01-03299 and 01-13119      James C. Beasley, Jr., Judge**

_____

**No. W2002-01486-CCA-R3-CD  - Filed September 16, 2003**

_____

The appellant, Oscar C. Wells, was convicted in the Shelby County Criminal Court of one count of first degree murder and one count of especially aggravated robbery.  The appellant received a total effective sentence of life plus ten years.  On appeal, the appellant challenges his arrest without a warrant and the trial court's failure to suppress the appellant's statement which was taken after his arrest.  Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES, J., joined. JERRY L. SMITH, J., filed a concurring opinion.

Robert Wilson Jones and Garland Ergüden, Memphis, Tennessee (on appeal); and Larry Nance, Memphis, Tennessee (at trial), for the appellant, Oscar C. Wells.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jennifer Nichols and David Pritchard, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On September 14, 2000, the appellant and Labaris Dale followed Iginio Rodriguez, the victim, into "the cut," a wooded area located between two apartment complexes, namely Landmark

Apartments and Willow Apartments, and a McDonald's Restaurant located on Frayser Boulevard.[1] Anthony Myles, who lived at Dale's mother's apartment with Dale and the appellant, saw the appellant and Dale walk into "the cut" and took an alternate route through "the cut" to attempt to catch up with the two men.

Myles came upon the appellant and Dale surrounding Rodriguez, and he stood about twenty feet away watching the confrontation. The appellant aimed a gun at Rodriguez and instructed Dale to search Rodriguez's pockets. Rodriguez refused to cooperate and the appellant shot him two times. Dale and Myles ran back to Willow Apartments to the apartment of Dale's mother. The appellant joined them approximately twenty minutes later. The appellant looked at Myles and said, "He ain't dead fool. He ain't dead." Then the appellant walked into the back of the apartment. Subsequently, the appellant "came from the back" of the apartment with a big knife in his pants, returned to "the cut," stabbed Rodriguez multiple times, and left Rodriguez to die.

Rodriguez managed to stumble from "the cut" to the parking lot of the Landmark Apartments. Rodriguez collapsed in the parking lot near the dumpsters and died before medical personnel arrived. The medical examiner opined that Rodriguez's death occurred from a gunshot wound to the stomach and a gunshot wound and a stab wound to the head. As a result of the investigation into the homicide of Rodriguez, the appellant was arrested without a warrant on October 8, 2000. Approximately nine hours after the appellant's arrest and after receiving Miranda warnings, the appellant gave oral and written statements to the police implicating himself, Dale, and Myles in the homicide.

Subsequently, on June 11, 2001, the appellant filed a "Motion to Suppress Statements and All Evidence Obtained in the Case." In support of this motion, the appellant contended that he requested an attorney prior to giving the statement. Additionally, the appellant claimed that he "was the subject of an illegal arrest in that there was neither probable cause nor reasonable suspicion to detain [him] at the time of the arrest. Therefore, all evidence obtained as the fruit of such arrest must be suppressed."

On November 16, 2001, the trial court held a hearing on the appellant's motion to suppress. At the hearing, Sergeant Michael Caudill with the Memphis Police Department testified that on September 14, 2000, he began an investigation into the homicide of Rodriguez. Sergeant Caudill noted that on September 16, 2000, Quiton White informed police that shortly before Rodriguez's body was found on the date of the offense, he witnessed the appellant, Dale, and Myles running from the woods where Rodriguez was killed. Additionally, Okeima Johnson, Dale's girlfriend at the time of the offense, told police that the night before the murder she witnessed Dale holding a gun and talking with Myles about robbing someone. Finally, Sergeant Caudill testified that Donnie Mitchell reported that he knew that the appellant, Dale, and Myles were involved in the robbery and homicide

---

[1] The record also refers to the victim as "Ignio Rodriguez." In this opinion, we will utilize the spelling included in the indictment.

of Rodriguez because Dale told Mitchell about the offense the day after it happened. Mitchell noted that when he saw Myles shortly after the offense, Myles looked "all sad."

The trial court stated, "[B]ased upon the proof that's been presented, the court is satisfied that . . . there was, in fact, probable cause for [the appellant] to be arrested and questioned and that he was advised of his rights." On appeal, the appellant raises the following issue for our review: "[w]hether the trial judge erred in finding probable cause to support the warrantless arrest and further erred in not suppressing Appellant's statement and all other evidence arising from the illegal arrest."

## II. Analysis

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

Tennessee Code Annotated section 40-7-103(a)(3) (1997) provides that an officer may arrest a person without a warrant "[w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it." In other words, the officer must have "probable cause to believe the person to be arrested has committed the crime." State v. Lewis, 36 S.W.3d 88, 98 (Tenn. Crim. App. 2000); see also State v. Robert A. Cummins, No. W2000-00277-CCA-R3-CD, 2001 WL 912792, at *5 (Tenn. Crim. App. at Jackson, Aug. 10, 2001) ("Our courts make little, if any, distinction between the terms 'reasonable cause' and 'probable cause' in determining whether there exists a basis for an arrest."). Our supreme court has explained that "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act," constitutes probable cause. State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998). Courts should determine the existence of probable cause after assessing all of the information available to the officer at the time of arrest. See State v. Woods, 806 S.W.2d 205, 212 (Tenn. Crim. App. 1990).

Tennessee Rule of Criminal Procedure 4(b) provides that in the application for the issuance of an arrest warrant, "[t]he finding of probable cause shall be based upon evidence, which may be hearsay in whole or in part provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." It has long been established that "[w]hile this rule applies itself particularly to warrants for arrest, the same principle must be considered applicable to establish probable cause where an arrest has been made without a warrant." State v. Raspberry, 640 S.W.2d 227, 228 (Tenn. Crim. App. 1982); see also State v. Tays, 836 S.W.2d 596, 600 (Tenn. Crim. App. 1992).

This court has observed that the "probable cause requirement [included in Rule 4(b)] essentially encompasses the Aguilar-Spinelli two-pronged test adopted by our Supreme Court in State v. Jacumin [778 S.W.2d 430 (Tenn. 1989)]." Tays, 836 S.W.2d at 600; see Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509 (1964). In other words, the hearsay statement relied upon by police must establish the informant's basis of knowledge and demonstrate the informant's reliability. However, our courts have also noted that the Aguilar-Spinelli test does not apply to "citizen informants." See State v. Luke, 995 S.W.2d 630, 636 (Tenn. Crim. App. 1998).

In the instant case, Sergeant Caudill testified that the appellant was arrested because of the information related by Johnson, White, and Mitchell. Johnson told the police that the night before the homicide, Dale was holding a gun and talking with Myles about robbing someone. From the record before us, we can find no indication that Johnson was from the criminal milieu or that she received any remuneration from the police for her assistance. See Lewis, 36 S.W.3d at 98-99. Thus, we conclude that Johnson was a citizen informant. Id.; see also State v. Johnie Jefferson, Nos. W1999-00747-CCA-R3-CD and W2000-01970-CCA-R3-CO, 2001 WL 1218287, at *13 (Tenn. Crim. App. at Jackson, Oct. 12, 2001), perm. to appeal denied, (Tenn. 2002). Accordingly, there need be no further showing regarding Johnson's veracity or basis of knowledge.

Additionally, White informed the police that on September 14, 2000, he saw three black males, namely the appellant, Dale, and Myles, running from the scene of the crime shortly before Rodriguez died in the parking lot of the Landmark Apartments. As with Johnson, White can best be classified as a citizen informant; therefore, his information is presumed reliable. Lewis, 36 S.W.3d at 98-99.

Finally, Mitchell stated that the night after the offense, Dale confessed that he, the appellant, and Myles were involved in the killing. This statement involves two layers of information. Dale's statement to Mitchell is the first layer. We have previously observed that "admissions of crime may carry their own indicia of credibility." State v. Moon, 841 S.W.2d 336, 340 (Tenn. Crim. App. 1992). Additionally, Dale's statement indicated that he was present as the offense was committed, demonstrating his basis of knowledge. Now we turn to the second layer of information, Mitchell's statement to the police. The record does not conclusively reveal that Mitchell was from the criminal milieu, nor does the record indicate that Mitchell gave information to the police in exchange for any sort of consideration. Therefore, we conclude that Mitchell was also a citizen informant and his information to the police was presumed reliable. See State v. Yeomans, 10 S.W.3d 293, 296 (Tenn. Crim. App. 1999). Regardless, even without Mitchell's information, the police had probable cause to arrest the appellant based solely upon the information given by Johnson and White.

On appeal, the appellant bases his argument concerning the trial court's error solely upon the validity of his arrest. Accordingly, in finding that the appellant's arrest was valid, we likewise conclude that the trial court did not err in admitting the statement that the appellant gave to the police while in custody after receiving Miranda warnings. See State v. Jenkins, 81 S.W.3d 252, 264 (Tenn. Crim. App. 2002). The appellant's complaints are without merit.

### III.  Conclusion

Based upon the foregoing, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE