IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January, 25, 2005

## STATE OF TENNESSEE v. KIRK WILLIAMS

**Appeal from the Criminal Court for Hamilton County**
**No. 244455     Rebecca J. Stern, Judge**

---

**No. E2004-01452-CCA-MR3-CD - Filed April 5, 2005**

---

The defendant, Kirk Williams, was indicted for driving under the influence and obstructing traffic. After granting a motion to suppress all evidence obtained from the traffic stop, the trial court permitted the state an application for a discretionary appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. Because the effect of the ruling was a dismissal of the charges, this court accepted the appeal under Rule 3 and waived the timely filing of notice of appeal by the state. The issue presented for review is whether the trial court erred by granting the motion to suppress. The judgment is reversed and the cause is remanded for a trial on the merits.

**Tenn. R. App. P.3; Judgment of the Trial Court Reversed and Remanded for Trial**

GARY R. WADE, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; and Boyd Patterson, Assistant District Attorney General, for the appellant, State of Tennessee.

Donna Robinson Miller, Assistant Public Defender, for the appellee, Kirk Williams.

**OPINION**

On July 12, 2002, Chattanooga Police Officer Christopher Sims, while on routine patrol, observed a 1978 Oldsmobile stopped on East 18th Street in Chattanooga, blocking a lane of travel on a two-lane residential street. The engine was idling, but the vehicle was not moving. According to Officer Sims, he stopped behind the vehicle and turned on his blue lights; he explained at the suppression hearing that he activated his emergency lights to signal to the occupants that he was present and then walked toward the vehicle in order to determine why it was stopped. As Officer Sims approached the driver's side window, he smelled alcohol on the defendant and asked him to perform field sobriety tests. The defendant performed one test but refused to do the one-leg stand, claiming he was injured. He was subsequently arrested for obstructing traffic and driving under the influence.

Jason Brooks, who was an employee of the defendant, testified for the defense at the suppression hearing. A passenger in the car on the day of the arrest, he claimed that he and the defendant were on the way to the defendant's residence when they saw the officer approach their car from the front instead of the rear, as asserted by Officer Sims. He contended that the officer blocked the path of their car and then turned on his blue lights. Brooks testified that the defendant was not stopped but conceded that he had been driving very slowly when the officer turned onto the street. According to Brooks, the defendant merely pulled his car over to let the officer drive by. He acknowledged that the officer stepped out of his patrol car, approached their vehicle, and asked, "Why [are] you stopped in the middle of the road or pulled over?"

At the hearing, the defendant denied that he was stopped but admitted that he was driving toward his residence "very slowly" when he saw the officer turn onto the street in front of him and activate his blue lights. He claimed that he pulled over as a courtesy to the officer and contended that the officer stopped in his path. According to the defendant, the officer approached the driver's door and asked "why [they were] stopped in the middle of the street." The defendant testified that he first asked the officer why he had been stopped and then explained that he had pulled his vehicle over to the side of the street to allow him to pass.

At the conclusion of the hearing on the motion to suppress, the trial court observed as follows:

> The police officer testified it was a two lane road . . . and that [the defendant] was not blocking any traffic. I find under either scenario, either the State's version or the defendant's version of the facts, that there is no reasonable and articulable suspicion that a crime had occurred, was occurring, or was about to occur in this case. The motion to suppress is sustained.

The state initially sought and received permission to appeal under Tennessee Rule of Appellate Procedure 9 because the trial court had not actually dismissed the underlying indictment following the order of suppression. By virtue of a miscommunication between the District Attorney's Office and the Attorney General's Office, the state, however, failed to file an application for appeal under Rule 9 within 30 days, as required, and later chose to proceed under Rule 3. See Tenn. R. App. P. 9(b). Its rationale was that the substantive effect of the trial court's order of suppression of the evidence was a dismissal of the indictment:

> In criminal actions an appeal as of right by the state lies only from an order or judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) the substantive effect of which results in dismissing an indictment, information, or complaint; . . . .

Tenn. R. App. P. 3(c). After determining that the order of suppression was, in fact, dispositive, this court approved the Rule 3 appeal and waived timely filing in the interests of justice. See Tenn. R.

App. P. 4(a); See, e.g., State v. Brown, 898 S.W.2d 749 (Tenn. Crim. App. 1994); State v. Stephen Udzinski, Jr., No. 01C01-9212-CC-00380 (Tenn. Crim. App., at Nashville, Nov. 18, 1993).

In this appeal, the state argues that the stop was not unlawful because the defendant had already stopped his vehicle when the officer arrived. Further, the state argues that the officer had a reasonable suspicion to believe that the defendant was obstructing traffic and that, therefore any incidental investigation was warranted. Finally, the state argues that a police officer does not need reasonable suspicion to approach a stopped car because it is part of their "community care taking or public safety function." See State v. Hawkins, 969 S.W.2d 936, 939 (Tenn. Crim. App. 1997).

Both the state and federal constitutions protect individuals from unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered subject to suppression. U.S. Const. amend. IV; Tenn. Const. art. I, § 7; Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997). Neither, however, limits all contact between citizens and law enforcement and both are designed, instead, "'to prevent arbitrary and oppressive interference with the privacy and personal security of individuals.'" INS v. Delgado, 466 U.S. 210, 215 (1984) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976)). Our courts have recognized three types of police-citizen interactions: (1) a full scale arrest, which must be supported by probable cause; (2) a brief investigatory stop, which must be supported by reasonable suspicion; and (3) a brief police-citizen encounter, which requires no objective justification. See Florida v. Bostick, 501 U.S. 429, 434 (1991); Brown v. Illinois, 422 U.S. 590 (1975); Terry v. Ohio, 392 U.S. 1 (1968). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry, 392 U.S. at 19 n.16.

An automobile stop constitutes a "seizure" within the meaning of both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450 (1990); Delaware v. Prouse, 440 U.S. 648, 653 (1979); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994); State v. Westbrooks, 594 S.W.2d 741, 743 (Tenn. Crim. App. 1979). The fact that the detention may be brief and limited in scope does not alter that fact. Prouse, 440 U.S. at 653; State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); Binion, 900 S.W.2d at 705; Westbrooks, 594 S.W.2d at 743. The basic question, as indicated, is whether the seizure was "reasonable." Binion, 900 S.W.2d at 705 (citing Sitz, 496 U.S. at 444). In Pulley, our supreme court ruled that "the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." 863 S.W.2d at 30.

Our determination of the reasonableness of a stop of a vehicle depends on whether the officer had either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants were subject to seizure for violation of the law. See Prouse, 440 U.S. at 663; State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989). While probable cause is not necessary for an investigative stop, it is a requirement that the officer's reasonable suspicion be supported by

"specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; Pulley, 863 S.W.2d at 30; Coleman, 791 S.W.2d at 505; see also State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (applying Terry doctrine in context of vehicular stop). In determining whether reasonable suspicion exists, an important factor in the analysis is that reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Pulley, 863 S.W.2d at 32 (citing Alabama v. White, 496 U.S. 325, 330 (1990)).

Courts considering the issue of reasonable suspicion must look to the totality of the circumstances. Those circumstances include the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. Watkins, 827 S.W.2d at 294 (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Objective standards apply rather than the subjective beliefs of the officer making the stop. State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

The scope of review is limited. When the trial court makes a finding of facts at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). The trial court's findings of fact are binding upon this court unless the evidence in the record preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); see also Stephenson, 878 S.W.2d at 544; State v. Goforth, 678 S.W.2d 477, 479 (Tenn. Crim. App. 1984). Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence. Odom, 928 S.W.2d at 23. The application of the law to the facts, however, requires de novo review. State v. Daniel, 12 S.W.3d 420, 423-24 (Tenn. 2000). Likewise, if the evidence does not involve a credibility assessment, the reviewing court must examine the record de novo without a presumption of correctness. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

In United States v. Drayton, 536 U.S. 194, 201-02 (2002), the Supreme Court determined that there is no Fourth Amendment violation when an officer simply approaches a person in a public place and poses a question. Even when there is no basis to suspect a crime, officers may ask questions, ask for identification, and ask for consent to conduct a search, so long as the means used to induce the cooperation are not coercive. Id.; see Daniel, 12 S.W.3d at 425. A reviewing court must examine "all the circumstances surrounding the encounter" in determining whether the law enforcement conduct would have indicated a lack of freedom "to decline the officers' requests or otherwise terminate the encounter." Bostick, 501 U.S. at 439. As indicated, the subjective intent of the officer is not controlling. State v. Johnson, 980 S.W.2d 414 (Tenn. Crim. App. 1998).

Here, the trial court implicitly found that the car was stopped but concluded that no traffic was being blocked at the time the officer arrived at the scene. Otherwise, there were no findings. Although there was some dispute as to whether the officer approached the defendant's vehicle from behind or from the front, that was apparently not a factor considered by the trial judge. In its decision, the trial court ruled that under "either scenario" (whether the officer arrived from the front or the rear), its conclusion would have been the same. It appears that the trial court suppressed the evidence because the defendant was on a two-lane road and was not blocking any traffic; therefore, the trial court concluded that the officer had no reasonable or articulable suspicion that a crime had occurred or was occurring.

As indicated, however, an officer need not suspect a crime in order to approach a citizen and ask questions. Further, it is well settled that an officer, as a part of his community caretaking or public safety function, may approach a citizen in a parked car. Cady v. Dombrowski, 413 U.S. 433 (1973); State v. Hawkins, 969 S.W.2d 936 (Tenn. Crim. App. 1997); State v. James Dewey Jensen, Jr., No. E2002-00712-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Nov. 15, 2002). In Cady, the United States Supreme Court made the following observation:

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

413 U.S. at 441.

In this instance, Officer Sims testified that he approached the vehicle in order to find out why it was stopped along the city residential street. The trial court appears to have found that the vehicle was stopped. Even if the car had been moving "very slowly," however, as testified to by the defendant, the same rationale would apply. In our view, the trial court erred by reaching the conclusion that the officer was required to have had a reasonable suspicion in order to approach the idling vehicle. From the limited findings made by the trial judge, this court cannot conclude that this was a seizure of the defendant requiring reasonable suspicion. Instead, the proof suggests that the officer's approach of the defendant was more likely a part of his community caretaking and public safety function to investigate a car stopped or appearing to be stopped in a lane on a city street.

In Jensen, a panel of this court pointed out that while the activation of blue lights ordinarily signals a stop or arrest, citing State v. Randolph, 74 S.W.3d 330, 338 (Tenn. 2002), "it is not unusual for a police officer to activate the blue lights on his or her patrol car for safety purposes." Jensen,

slip op. at 3.  In this instance, Officer Sims explained that he did so to identify himself because the defendant's vehicle was already stopped in the street.  Typically, community caretaking functions qualify as neither full scale arrests nor investigatory stops because they involve no coercion or detention. United States v. Berry, 670 F.2d 583, 591 (5th Cir. 1982).  The encounters are consensual and have been applied to individuals in parked vehicles.  3 Wayne R. LaFave, Search and Seizure § 9.2(h) (2d ed. 1987).  The totality of the circumstances in light of the time and place of the encounter and the conduct of the individuals involved must control.  United States v. Cortez, 449 U.S. 411, 417 (1981).

The circumstances, here, whether the officer had approached from the front or the rear, warranted the encounter.  The record establishes that the vehicle was either stopped or traveling so slowly as to make it difficult to tell the difference.  The photographs document the width of the street and the unmarked lanes of traffic.

Accordingly, the judgment of the trial court is reversed and the cause is remanded for a trial on the merits.

_____
GARY R. WADE, PRESIDING JUDGE