IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 14, 2009

## LEMAR J. WHITE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 01-11077     James C. Beasley, Jr., Judge**

_____

**No. W2008-01661-CCA-R3-PC  - Filed May 20, 2010**

_____

Petitioner Lemar J. White was convicted of first degree premeditated murder and sentenced to life in prison.  After this court affirmed his conviction, he filed a petition for post-conviction relief, alleging he received ineffective assistance of both trial and appellate counsel.  Specifically, he claims both attorneys should have challenged the validity of his warrantless arrest because the State did not supply a sufficient basis for finding probable cause.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Robert Brooks, Memphis, Tennessee, for the appellant, Lemar J. White.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William L. Gibbons, District Attorney General; and Damon Griffin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The facts leading to Petitioner's indictment and conviction are summarized in our direct appeal decision.  See State v. Lemar J. White, No. W2004-00276-CCA-R3-CD, 2005 WL 331384, at *1 (Tenn. Crim. App. at Jackson, Feb. 11, 2005).  In short, the victim in this case was shot to death in his front yard during "a barrage of approximately fifteen to twenty gunshots."  Id.  While no one saw the shooter, police learned that the shots came from an

area behind a fence. Id. When they examined the area, they discovered "a green plastic chair near an opening in the fence, which permitted a clear view of the victim's house." Id. They also found twelve shell casings on the ground around the chair. Id. Police found five fingerprints on the chair that matched Petitioner's. Id. Petitioner was living with his mother at the time, and police obtained her consent to search her house. Id. Their search revealed a hidden SKS 7.62 rifle that ballistics testing showed matched the spent shell casings found near the chair. Id. Police arrested Petitioner without a warrant, and, after initial denials, Petitioner confessed to shooting the victim in a murder-for-hire scheme. See id.

At trial, the State called Sergeant William Merritt, an officer with the Memphis Police Department (MPD), who testified that he arrived at the scene shortly after the shooting and discovered a lawn chair across the street. The chair was positioned behind a fence with a hole in it providing a clear view of the location where the victim was shot. He also located several shell casings on the ground around the chair. In addition, Sergeant Merritt testified that he told Petitioner during his interview that the police had fingerprints linking Petitioner to the shooting. Sergeant Merritt then testified:

> Q.     And did, in fact, you had the finger–I mean, it wasn't something you
>        made up, was it?
> A.     That is correct.

Later, in response to trial counsel's request that Sergeant Merritt state "every specific fact which [he] relied upon to give [him] probable cause," Sergeant Merritt testified that police had discovered a chair with Petitioner's fingerprints on it and that shell casings were found on the ground around the chair. He further noted that the chair's owner did not know Petitioner, a question police asked prior to arresting Petitioner so that they could exclude a legitimate reason for his fingerprints being on the chair.

The State called two other MPD officers at trial. The first, Officer Francis Donald Carpenter, testified that he discovered several prints underneath the chair's armrests during an examination on March 5, 2001. The second, Officer Martin Milner, testified that he received the fingerprints discovered by Officer Carpenter and that he searched the Automated Fingerprint Identification System for potential matches. The system indicated that Petitioner's fingerprints matched those found on the chair, and Officer Milner's personal examination, which also occurred on March 5, 2001, confirmed the match.

At the conclusion of the trial, Petitioner was convicted of first degree premeditated murder and sentenced to life in prison.

Petitioner filed a motion for a new trial, arguing, in part, that the State lacked probable cause to arrest him without a warrant. He specifically argued that the fingerprints obtained

from the lawn chair were insufficient to establish probable cause. The trial court denied the motion, and this court affirmed Petitioner's conviction on direct appeal.

Petitioner then filed the present petition for post-conviction relief. He called two witnesses at the post-conviction hearing. The first, Petitioner's trial counsel, testified that he was an experienced criminal lawyer who had practiced law for approximately 32 years.

Trial counsel testified that Petitioner gave a "very damaging" and lengthy "full confession" to investigators. Trial counsel moved to suppress the statement on the grounds that it was improperly induced. Petitioner told counsel that he gave the statement after the officers told him he would be released after he gave a statement. Counsel did not argue that Petitioner was arrested without a warrant and without probable cause. Trial counsel recalled that the officers at the suppression hearing testified that they had found and analyzed fingerprints at the scene and concluded that they matched Petitioner's. Specifically, he noted that the police discovered Petitioner's fingerprints on the lawn chair and that its owner informed the police that she did not know Petitioner and therefore Petitioner had no reason to touch it. Trial counsel explained that he "didn't think that there was even an issue of probable cause" and that "the circumstances behind the finding of the chair and the fingerprint analysis . . . was sufficient to establish the probable cause." Consequently, trial counsel decided that a probable cause argument would have been frivolous, and he noted his position was vindicated when the trial court "gratuitously" found probable cause for the arrest.[1]

Petitioner's second witness was his direct appeal counsel. Appellate counsel testified that he had worked for the public defender's office since 1990 and had worked as an appellate attorney in the office since 1996. He had handled approximately 250-300 appeals during that time.

Appellate counsel testified that he did not raise an issue regarding the existence of probable cause to arrest Petitioner without a warrant because there was no evidence in the record to support the argument. He further noted that he believed probable cause was a "non-issue" in the case because of the evidence the police discovered on and around the lawn chair. Thus, while he recognized that the issue of probable cause was raised in trial counsel's motion for a new trial, appellate counsel declined to press that argument on appeal.

At the close of evidence, Petitioner argued that because he was arrested without a warrant, the State was required to prove the existence of probable cause but failed to do so. In the post-conviction court's words, to which Petitioner agreed, the claim "is that trial counsel failed to object or require the state to prove probable cause to the initial arrest [and

---

[1] The issue was not raised in Petitioner's motion nor was it argued.

that] appellate counsel was ineffective for not raising that issue on appeal." Petitioner argued that trial counsel's failure to raise the issue, and appellate counsel's failure to argue it on appeal, was constitutionally deficient and prejudiced Petitioner because the evidence from the suppression hearing did not satisfy the government's burden to show probable cause. Petitioner asserted that "it's not a question of whether there was probable cause, the question [is] whether the state carried its burden of proof in that there was probable cause."

The State argued that the police had probable cause to make the arrest and therefore Petitioner failed to establish prejudice.

The post-conviction court agreed with the State. In its written order, the court stated:

This Court has reviewed the transcript of the trial and the Motion to Suppress evidence. It appears to the Court that the police did in fact have probable cause to arrest the petitioner. Based upon the proof, the crime scene was a chair in the backyard of a home. Scattered around the chair were multiple shell casings, consistent with the manner in which the victim was shot. Multiple fingerprints belonging to the petitioner were found on the chair. This Court is of the opinion based upon the proof and the lack of any proof to contest or contradict that evidence that the police did in fact have probable cause to arrest the petitioner. Further, this Court finds that the trial court in fact addressed this issue whether trial counsel raised it or not and ruled that the police did have probable cause for the arrest. Therefore, even if trial counsel and appellate counsel did not raise the issue it would be harmless error because there was in fact probable cause for the arrest.

Petitioner raises the same issues on appeal.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight

of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). We review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

### A. Ineffective Assistance Of Trial Counsel

With respect to Petitioner's claim regarding his trial counsel, he correctly notes that the failure to file a motion to suppress evidence can, in some cases, form the basis for a claim of ineffective assistance of counsel. See Northrop v. Trippett, 265 F.3d 372, 378 (6th Cir. 2001) (citing Kimmelman v. Morrison, 477 U.S. 365, 382-83 (1986)); see also Lueptow v. State, 909 S.W.2d 830 (Tenn. Crim. App. 1995). However, to be entitled to relief because trial counsel failed to move to suppress evidence, Petitioner must "prove that his Fourth Amendment claim is *meritorious* and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Northrop, 265 F.3d at 384 (quoting Morrison, 477 U.S. at 375) (emphasis added).

Petitioner has failed to establish that his Fourth Amendment claim is meritorious. Tennessee law provides that an officer may arrest a person without a warrant "[w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested has committed it." Tenn. Code Ann. § 40-7-103(a)(3); see also State v. Lawrence, 154 S.W.3d 71, 75 (Tenn. 2005). Unquestionably, homicide, in its varying forms, is a felony. See Tenn. Code Ann. § 39-13-201, *et. seq*. Thus, our next inquiry is whether police had probable cause to believe that Petitioner committed the offense. See State v. Lewis, 36 S.W.3d 88, 98 (Tenn. Crim. App. 2000). Probable cause is established when "the facts and circumstances and reliable information known to the officer at the time of arrest were sufficient to warrant a prudent person in believing that the individual had committed or was committing an offense." Lawrence, 154 S.W.3d at 75-76 (quotation marks and brackets omitted). "Mere suspicion" is not enough. Id. Moreover, courts determine the existence of probable cause after assessing all of the information available to the officer at the time of arrest, including hearsay evidence. See Tenn. R. Crim. P. 4(b); State v. Tays, 836 S.W.2d 596, 600 (Tenn. Crim. App. 1992); State v. Woods, 806 S.W.2d 205, 212 (Tenn. Crim. App. 1990); State v. Raspberry, 640 S.W.2d 227, 228 (Tenn. Crim. App. 1982).

Here, as the trial court noted, the evidence demonstrated there was a sufficient basis to establish probable cause. Prior to his arrest, police discovered Petitioner's fingerprints on the lawn chair that was positioned to allow a shooter to fire at the victim through a fence. In addition, bullets were found around the chair, indicating that the shots that killed the victim were fired from the chair. The owner of the chair told police that she did not know Petitioner, so there was no reason for his fingerprints to be on it. These facts and circumstances warrant a prudent person's believing that Petitioner killed the victim.

Petitioner argues that prejudice can be established because the evidence elicited at the suppression hearing did not satisfy the State's burden of showing probable cause. We disagree. The record reflects that, prior to trial, Petitioner filed a motion to suppress his confession.[2] In that motion, Petitioner argued that his statement was improperly elicited and that his arrest was unconstitutional because the police lacked probable cause. At the hearing on the motion, Sergeant Merritt testified that he interviewed Petitioner on March 5, 2001, after his arrest. Petitioner initially denied involvement in the victim's death. Sergeant Merritt then "told [Petitioner] that [the police] had recovered fingerprints . . . that placed

_____

[2] The State argues that Petitioner waived this issue because he did not include the record for his underlying conviction as part of the record in this post-conviction appeal. We disagree. The record clearly indicates that the post-conviction court ordered that the record be sent for his review and that trial counsel asked that it be part of the record on this appeal. Moreover, the record is housed in the clerk's office and was thus available for our review. We have obtained the record of Petitioner's direct appeal and have reviewed it in our determination of the present appeal.

[Petitioner] at the scene of the shooting." Soon thereafter, Petitioner confessed to killing the victim.

The suppression hearing ended abruptly when Petitioner took the stand and again confessed to killing the victim in a murder-for-hire scheme. At that point, trial counsel asked to continue the suppression hearing to allow the attorneys to "discuss the new developments," and the court agreed. The State asked the trial court to make a ruling in the event plea discussions were not successful. From the record before us, it appears the hearing never resumed.

The trial court issued a lengthy written order denying Petitioner's motion. In its order, the trial court specifically found that the police had probable cause to arrest Petitioner without a warrant, noting:

> In the present case the MPD had lifted [Petitioner's] fingerprints from a chair apparently used by the alleged shooter. This provides a basis to lead a reasonable person to believe [Petitioner] was involved in a felony. Therefore, [Petitioner's] arrest was based on probable cause within the meaning of the Fourth Amendment and within the guidelines set forth in [Tennessee Code Annotated section] 40-7-101 *et seq*.

Now, before this court, Petitioner argues that he can establish prejudice because the evidence the State adduced at the suppression hearing does not demonstrate probable cause. According to Petitioner, the testimony in the suppression hearing was limited to what law enforcement *told* Petitioner about the evidence, i.e., that officers told Petitioner they had found his fingerprints on the chair, not what the evidence *actually showed*.

This argument misses the mark. The issue relating to probable cause to arrest was not addressed at the hearing. According to trial counsel's testimony, he narrowed his argument to improper inducements, so the State narrowed its evidence to that argument as well. Indeed, because of the abrupt ending to the hearing, the State did not even put on any evidence of its own. Regardless, the trial court addressed the issue in its written order, finding that the State had probable cause. Petitioner would have us consider probable cause solely on the basis of the evidence from the suppression hearing. However, Morrison instructs courts to look to the merits of the underlying claim. See 477 U.S. at 375. We have no difficulty concluding that the police had probable cause to arrest Petitioner. Therefore, Petitioner has failed to meet the prejudice prong of the Strickland analysis with respect to his claim regarding trial counsel.

## B. Ineffective Assistance Claim Regarding Appellate Counsel

Petitioner's claim regarding appellate counsel fairs no better. While Petitioner is correct that ineffective assistance of appellate counsel can form the basis for a post-conviction relief claim, see House v. State, 911 S.W.2d 705, 712 (Tenn. 1995) (citing Douglas v. California, 372 U.S. 353 (1963)), he must still satisfy the requirements of Strickland. Here, even if he could establish deficient performance, Petitioner cannot establish prejudice.

As noted above, the theory in Petitioner's motion to suppress was that the officers improperly induced Petitioner to make a statement by promising him he would be released. Probable cause to arrest was not addressed at the suppression hearing. Regardless of whether the issue was preserved or appellate counsel would have had to press the claim as a matter of plain error, Petitioner must still demonstrate that the issue had merit. Appellate counsel testified that he did not believe the claim had any merit, and, as explained above, we agree. The trial court specifically found probable cause, and the evidence in the record supports that conclusion. Petitioner has therefore failed to establish prejudice with respect to his claim of ineffective assistance of appellate counsel.

### III. Conclusion

Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE