**STATE of Tennessee, Appellee,**

v.

**Rodney Thomas RASPBERRY, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

April 8, 1982.

Permission to Appeal Denied by the Supreme Court June 21, 1982.

William M. Leech, Jr., Atty. Gen., Rhona J. Cartwright, Asst. Atty. Gen., Nashville, Carolyn Carlton Lowe, Research Asst., George Hymers, Dist. Atty. Gen., Jackson, for appellee.

Hughie Ragan, Jackson, for appellant.

## OPINION

O'BRIEN, Judge.

Defendant was indicted by the Madison County Grand Jury for the offense of second degree burglary. Motions to suppress State's evidence of the offense because defendant was unlawfully arrested and searched without an arrest or search warrant, and to suppress a confession made by him for the same reasons, were over-ruled in the trial court. A subsequent motion to dismiss the indictment on the premise that defendant had previously entered a guilty plea to concealing stolen property in an adjoining county involving the same property which he was charged with obtaining in the course of the burglary was also overruled. Defendant then entered a plea of guilty to second degree burglary. He received a three (3) year sentence which was to run concurrently with the two (2) year sentence adjudicated for concealing the stolen articles in Henderson County. He reserved the right to appeal his conviction upon the certified question of the legality of the search and the legality of his arrest, and denial of the motion to suppress his confession.

 The motions to suppress evidence allegedly obtained in an illegal search and to deny admission of defendant's confession were consolidated in the trial court. We comment at the outset that the evidence at the suppression hearing was exceedingly scant because of constant objection on the part of defense counsel to the admission of hearsay evidence, the extreme caution exercised by the District Attorney General in submitting hearsay evidence, and the reluctance of the trial judge to allow its admission. As a result there was little to go on for the trial judge to make a decision in the matter, and a bare record submitted for this Court's examination on appellate review. Neither the statement of the trial judge in the transcript, nor his order overruling the motion to suppress offers much greater assistance. We specifically call attention to Rule 4(b) of the Rules of Criminal Procedure which holds that the finding of probable cause shall be based upon evidence, which may be hearsay in whole or in part provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished. While this rule applies itself particularly to warrants for arrest, the same principle must be considered applicable to establish probable cause where an arrest has been made without a warrant. This must be

true because the information to be considered is that available to the officer at the time of the arrest or search. See LaFave, Search and Seizure, Sec. 3.2(d). While there is a limitation on the nature of the hearsay evidence which may be admissible to establish probable cause, frequently the arresting officer has information from various sources of hearsay, such as police informants, victims and witnesses, or other law enforcement personnel, and it is largely a matter of discretion on the part of a trial judge to admit that information he considers necessary in determining whether or not probable cause for an arrest or a search exists. When that decision has been made it becomes essential for him to set out in his order granting or denying a suppression motion his reasons for doing so in order that the correctness of his decision may be assessed on appellate review. On the subject of the admissibility of hearsay at probable cause hearings the United States Supreme Court had this to say in *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974):

"Search warrants are repeatedly issued on ex parte affidavits containing out-of-court statements of identified and unidentified persons. *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). An arrest and search without a warrant were involved in *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). At the initial suppression hearing, the police proved probable cause for the arrest by testifying to the out-of-court statements of an unidentified informer. The Government would have been obligated to produce the informer and to put him on the stand had it wanted to use his testimony at defendant's trial, but we sustained the use of his out-of-court statements at the suppression hearing, as well as the Government's refusal to identify him. In the course of the opinion, we specifically rejected the claim that defendant's right to confrontation under the Sixth Amendment and Due Process Clause of the Fourteenth Amendment had in any way been violated. We also

made clear that there was no contrary rule governing proceedings in the federal courts.

There is, therefore, much to be said for the proposition that in proceedings where the judge himself is considering the admissibility of evidence, the exclusionary rules, aside from rules of privilege, should not be applicable; and the judge should receive the evidence and give it such weight as his judgment and experience counsel. However that may be, certainly there should be no automatic rule against the reception of hearsay evidence in such proceedings, . . . ."

As to the suppression hearing itself, the evidence to be gleaned from the hearing shows that on the 24th day of June, 1980 two persons named Randy Buck and Freddie Yarbro, came into Duke's Grocery on Highway 20 outside the City of Lexington in Henderson County and sold a .30/.30 rifle to Mrs. Doris Jean Middleton, an employee in the store, for the sum of $50. She identified defendant at the suppression hearing as being present in the vehicle in which those parties arrived. He did not come into the store at the time. In some manner, not related in the record, the Lexington police got wind of the purchase of the gun and called Mrs. Middleton. The police seem to have known the gun was stolen, and requested her to bring it to police headquarters. From the record it appears they may have sold a shotgun to someone else. At any rate the police had a description of the automobile in which Buck, Yarbro and Raspberry were riding, including the license plate number. This information was dispatched by radio to the patrolmen in the area. Shortly thereafter Patrolman Rickey Henry of the Lexington Police Force observed the automobile pull into a service station. He pulled in beside the vehicle in question occupied by Buck, the defendant, and two others. As is not unusual in small rural communities, the officer recognized both Buck and defendant and, although Buck was driving, knew the automobile belonged to neither of them. The officer talked to both Buck and Raspberry inform-

ing them of the radio dispatch involving the automobile and asked them if they had any guns. Receiving an affirmative reply he asked if he could see them. Buck opened the trunk disclosing three or four guns wrapped in a blanket. The officer talked to the men separately and they related different stories about how they had come into possession of the weapons. They each said they were attempting to sell the guns for another person however Buck described this individual as a man driving a red truck while Raspberry said he was operating a blue car. Their respective descriptions of the individual did not tally. One said the man was dark-headed and the other said he was blonde. As a result of these discrepancies the officer asked Buck if he would mind accompanying him to the police station. The rest of them came along in the automobile with him. When they arrived at the police station all of the men in the car with Buck followed him in. Once inside the police station Buck and defendant were advised of their rights. They were then interviewed and in short order Raspberry gave a statement admitting the burglary in Madison County where the guns were stolen.

 On the motion to suppress we have no hesitation in holding that the original investigatory stop, the arrest of defendant, and his resultant confession were neither invalid or improper. The courts have consistently held that an investigative stop is permissible whenever an officer has reasonable suspicion supported by specific and articulable facts that an offense has been, or is about to be, committed. More recently the United States Supreme Court in *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621, (1981), has seen fit to elucidate and define the circumstances and conditions under which such a stop may be made, in doing so they made it clear that an officer may stop and question a person if there is reasonable grounds to believe that he is wanted for past criminal conduct. 101 S.Ct. at 695, note 2. In *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), it was recognized that some seizures covered by the Fourth

Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interest that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity. In the case before us the officer had information from a police report that a person or persons traveling in an automobile whose description and license number had been provided him were in the process of selling guns in a manner which incited suspicion of the authorities that the guns were probably stolen. Under such circumstances the temporary detention of defendant would have been proper. Factually, the defendant and his friends were already stopped at the service station. The officer also stopped for the purpose of making inquiry about their possession of guns based on the information acquired by him from the radio dispatch. The defendant and Buck voluntarily disclosed that they had more weapons in the automobile and Buck voluntarily opened the trunk without any compulsion on the part of the officer and exposed the guns, wrapped and concealed there in a blanket, to his inspection. We think the officer's insistence at the suppression hearing that defendant and his companions were not under arrest was based on the premise that no steps had been taken for their formal arrest. That is, no declaration of arrest had been made, nor had a warrant been obtained for that purpose. As the United States Supreme Court made clear in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), at 392 U.S. at 16, 88 S.Ct. at 1877, 20 L.Ed.2d at 903, "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." The text of that case makes it clear that for Fourth Amendment purposes the words "stop", "arrest", or "seizure", are synonymous. However, in this case the exposure of the guns to the officer's view, coupled with the information which had previously come to his knowledge, and the discrepancies in the statements of Buck and Raspberry regarding their possession of the weap-

ons established sufficient probable cause for their arrest. This too disposes of the issue of the validity of defendant's confession which was based on his complaint of an illegal arrest.

■ The issue complaining of denial of a motion to dismiss cannot be sustained. It is defendant's insistence that his previous guilty plea to concealing stolen property in Henderson County would prevent the entry of a judgment against him for burglary in Madison County on the grounds of double jeopardy. Specifically he says he cannot be charged with burglary in one county and concealment of the goods which were the fruits of the burglary in another county. This argument cannot be sustained. In the case of *State v. Davis,* 613 S.W.2d 218, (Tenn.1981), in which our Supreme Court, citing the decision of this Court in *Greer v. State,* 539 S.W. 855, (Tenn.1976), specifically spelled out that where an episode or transaction constitutes a violation of two distinct statutory provisions; and neither is a lesser included offense of the other; each of the offenses requires proof of an additional fact which the other does not, separate convictions may be sustained. The fact that the convictions in this case were incurred in different counties does not add any element to the case which would effect their validity.

The judgment of the trial court is affirmed.

DWYER and TATUM, JJ., concur.