IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 23, 2003 Session

## STATE OF TENNESSEE v. KENNETH E. COFFEY

**Direct Appeal from the Johnson County Criminal Court**
**No. 3918     Lynn W. Brown, Judge**

_____

**No. E2002-02794-CCA-R3-CD**
**December 10, 2003**
_____

The Johnson County Grand Jury indicted the Defendant, Kenneth E. Coffey, for possession with intent to sell and deliver 241.1 grams of marijuana, in violation of Tennessee Code Annotated section 39-17-417 (Supp. 2000). Following the trial court's denial of the Defendant's motion to suppress evidence, the Defendant pled guilty to Possession of Marijuana for Purpose of Sale. The trial court sentenced the Defendant to one year in prison and imposed a $2,000.00 fine. The Defendant reserved the right to appeal a certified question of law regarding the trial court's denial of his motion to suppress. Finding no error, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JR., JJ., joined.

Steve McEwen, Mountain City, Tennessee, for the appellant, Kenneth E. Coffey.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Renee W. Turner, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and William Harper, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

The Defendant filed a motion to suppress 241.1 grams of marijuana obtained from the Defendant when he was arrested and searched incident to his arrest on May 22, 2001. The Defendant asserted that there was no probable cause to perform a warrantless arrest of him and to conduct a warrantless search and seizure of evidence from his pickup truck. At the suppression hearing, the trial court found probable cause for a warrantless arrest of the Defendant and for a warrantless search and seizure of evidence from his pickup truck incident to the arrest. Accordingly, the trial court denied the Defendant's motion to suppress. The Defendant subsequently entered a guilty plea to possession of marijuana for the purpose of sale in violation of Tennessee Code Annotated section

39-17-417. The trial court sentenced the Defendant to one year in prison and imposed a $2,000.00 fine. The Defendant reserved the right to appeal a certified question of law: whether the trial court erred in finding that officers had probable cause to effectuate a warrantless arrest of the Defendant and to conduct a warrantless search and seizure of evidence from the Defendant?

The following evidence was presented at the suppression hearing held on June 17, 2002. Agent Freddie Gene Ainsworth, of the Johnson County Sheriff's Department, testified that he was involved in a long-term investigation of Linda Gail Hawks regarding the sale of illegal drugs. Agent Ainsworth explained that, as a result of this investigation, he learned that the Defendant was delivering a substantial amount of marijuana to Hawks in Mountain City, Tennessee, on May 22, 2001.

Agent Ainsworth testified that a confidential informant, who he had known for many years, told him that Hawks had called the informant and told her that Hawks was going to meet someone at the Tennessee/North Carolina state line at Poplar Ridge Station to purchase marijuana. Agent Ainsworth stated that the informant told him that Hawks was currently at the Midway bar located in Trade, Tennessee. Accordingly, Agent Ainsworth and three other law enforcement officials headed towards the Midway bar. Agent Ainsworth stated that as they approached the Midway bar, they saw Hawks in her red Toyota pickup truck leaving the bar. The agent testified that they followed Hawks towards Poplar Ridge Station and, in an effort to survey the area, parked the police car behind a fireworks stand at the state line.

Agent Ainsworth reported that, soon thereafter, the Defendant's black pickup truck went past them headed in the direction of Poplar Ridge Station. He stated that he recognized the vehicle from having previously seen it parked at Hawks's residence; however, he was unable to identify the driver as the Defendant at the time the black pickup truck passed them. Agent Ainsworth explained that he and the other officers gave them "a few minutes" and then approached the pickup trucks, which were parked next to each other at Poplar Ridge Station. The agent stated that there were two individuals in the Defendant's pickup truck, one of which Agent Ainsworth identified as Hawks. Agent Ainsworth testified that he activated the blue lights of his police vehicle, that he identified himself as being with the sheriff's department, and that he told the Defendant and Hawks to "freeze."

Agent Ainsworth stated that, upon hearing him say "freeze," the Defendant began "fumbling around in the middle of the truck." He reported that, on a previous occasion, when he unsuccessfully attempted to purchase a pound of marijuana from the Defendant, he was warned by Charlie Danner, a supervisor in Narcotics Enforcement for the Sheriff's Office of Watuga County, that the Defendant was likely carrying a gun. Officer Danner testified and confirmed that he warned Agent Ainsworth to be careful when dealing with the Defendant because the Defendant had a reputation for carrying a firearm "when he carried drugs." Agent Ainsworth explained that the Defendant was removed from the vehicle, handcuffed, frisked as a safety precaution, and placed in the back of a patrol car. Agent Ainsworth stated that he then searched the Defendant's vehicle. He testified that he saw a jacket in the middle of the seat. The agent further testified that when he picked up the jacket he saw a grocery bag containing what he believed to be marijuana. He explained that he placed the jacket

back on the seat in the position he found it, took a photograph, and then proceeded to do a more thorough search of the vehicle and grocery bag. He stated that tests confirmed that the grocery bag contained 241.1 grams of marijuana. Agent Ainsworth reported that the search of the Defendant yielded a small bag of marijuana, a methadone pill, and $1,095.00 in cash, and that the search of Hawks yielded $272.25 in cash.

On cross-examination, the defense questioned the truthfulness of the confidential informant, and Agent Ainsworth conceded that prior to the Defendant's arrest, no arrests had been made as a result of information provided by the informant. Agent Ainsworth was asked how the informant learned of the drug buy, and he recounted that the informant told him that she had spoken with Hawks on the telephone while Hawks was at the Midway bar. Agent Ainsworth testified that the informant told him that Hawks was at the Midway bar, and that she was "going to meet . . . a subject at the state line at Poplar Ridge Station where [Hawks] was going to purchase approximately a quarter pound of pot. . . ." Agent Ainsworth acknowledged that, because he pulled up behind the Defendant's vehicle, he could not see what the Defendant was doing when he was "fumbling around in the middle of the truck" and that the Defendant could have been trying to remove his seatbelt. Agent Ainsworth also stated that he could not see any transactions that had taken place in the vehicle. Further, he testified that he found no weapons in the Defendant's vehicle or on his person.

When asked by the trial court, Agent Ainsworth reported that the informant had always provided him with accurate information and was responsible for setting up a "couple of buys" for officers that she introduced to dealers. He also stated that she made between five and eight marijuana buys for the Drug Task Force. When asked if the informant ever gave him incorrect information, Agent Ainsworth said "no" and stated that, every time the informant had given him information, it turned out to be true.

## II. Analysis
### A. Certified Question of Law

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive. Tennessee Rule of Criminal Procedure 37(b) provides, in pertinent part, that:

> An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction . . . upon a plea of guilty [if] . . . [the] Defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case and the following requirements are met:

(A) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by the defendant for appellate review;

(B) The question of law must be stated in the judgment or document so as to identify clearly  the scope and limits of the legal issue reserved;

(C) The judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and

(D) The judgment or document must reflect that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b); see State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988).  The record evinces that all of the mandatory requirements are clearly met, and the only issue is whether the certified question of law is dispositive of the case.  We have stated that a dispositive issue is one where the appellate court "must either affirm the judgment or reverse and dismiss.  A question is never dispositive when [the appellate court] might reverse and remand for trial . . . ."  State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984).

The certified question of law in this case is whether the trial court erred in finding that officers had probable cause to effectuate a warrantless arrest of the Defendant and to conduct a warrantless search and seizure of evidence from the Defendant.  Because the State's entire case is based upon the warrantless arrest, if we find that the arrest was unconstitutional, then the resulting search of the Defendant's vehicle would violate the Fourth Amendment to the United States Constitution and Article 1, section 7, of the Tennessee Constitution, and the drugs found in the Defendant's possession would be fruit of the poisonous tree.  Therefore, should we hold that the arrest was unconstitutional, the State cannot provide any evidence as to the guilt of the Defendant; accordingly, we find that the certified issue is dispositive.

### B.  Motion to Suppress

The Defendant contends that the trial court erred when it denied the motion to suppress, finding that officers had probable cause to effectuate a warrantless arrest of the Defendant and to conduct a warrantless search and seizure of evidence from the Defendant.  The standard of review for a trial court's findings of fact and conclusions of law in a suppression hearing was established in State v. Odom, 928 S.W.2d 18 (Tenn. 1996).  This standard mandates that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise."  Id. at 23; see State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002).  The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence."  Odom, 928 S.W.2d at 23.  Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the

trier of fact." Id. However, this Court reviews the trial court's application of the law to the facts de novo, without any deference to the determinations of the trial court. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. Odom, 928 S.W.2d at 22-23; State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

In order to effectuate a warrantless arrest, the arresting officer must have "probable cause." "Probable cause" is "a fair probability that contraband or evidence of a crime will be found. . . ." United States v. Sokolow, 490 U.S. 1, 7 (1989) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). The State asserts that Agent Ainsworth had probable cause based upon the information he was provided by the confidential informant. The Defendant asserts that the informant was not credible and had no basis for her knowledge and, therefore, asserts the evidence should be suppressed.

When a stop is based on the information from a criminal confidential informant, the factors set forth in State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989), are useful in evaluating the sufficiency of the information.[1] In Jacumin, the Tennessee Supreme Court adopted the test articulated by the United States Supreme Court in Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969), commonly referred to as the "Aguilar-Spinelli test," to determine whether there was probable cause, based upon information provided by a criminal confidential informant. Jacumin, 778 S.W.2d at 436. The Tennessee Supreme Court found that the Aguilar- Spinelli test was "in keeping with the specific requirement of Article I, Section 7 of the Tennessee Constitution that a search warrant not issue 'without evidence of the fact committed.'" Jacumin, 778 S.W.2d at 436. The Aguilar-Spinelli test consists of two prongs, the first is commonly referred to as the "veracity" prong, and the second is commonly referred to as the "basis of knowledge" prong. This Court has found that "any deficiency in the informant's information under [the Aguilar-Spinelli] two-prong test may be overcome by independent police corroboration." State v. Marshall, 870 S.W.2d 532, 539 (Tenn. Crim. App. 1993).

---

[1] The Tennessee Supreme Court has distinguished between information provided by known citizen informants and that obtained by a criminal informant. State v. Cauley, 863 S.W.2d 411. 417 (Tenn. 1993). This Court has explained:

> Information supplied by a criminal informant must be analyzed under the Jacumin test, while the known citizen informant is presumed to be reliable. Cauley, 863 S.W.2d at 417. Citizen informants . . . gained their information through first-hand experience. [State v. Melson, 638 S.W.2d 342, 354-56 (Tenn. 1982)]. The criminal informant provides information in exchange for some consideration – whether it be monetary or the granting of some exemption or privilege – while the citizen informant acts in the interest of society or personal safety. State v. Smith, 867 S.W.2d 343, 347 (Tenn. Crim. App. 1993) (citing State v. Paszek, 50 Wis.2d 619, 184 N.W.2d 836, 842-43 (1971)).

State v. Luke, 995 S.W.2d 630, 636 (Tenn. Crim. App. 1998). Nothing in the record indicates that the confidential informant was a citizen informant or a criminal informant; however, both the prosecution and the defense, as well as the trial court, apply the Jacumin test. We conclude that the State implicitly waived any claim that the confidential informant was a "citizen informant." Moreover, the State did not raise this issue in its appellate brief. Accordingly, for purposes of this appeal, we are treating the confidential informant as a criminal informant.

The "veracity" prong "requires a showing that the informant is credible *or* the information is reliable." State v. Luke, 995 S.W.2d 630, 636 (Tenn. Crim. App. 1998) (emphasis added). "Ordinarily, the general credibility of an informant has been shown by his having previously given relevant information to law enforcement which has proven reliable. Obviously, an informant's 'track record' of providing verified information would be relevant in inferring that the informant is a credible person." State v. Moon, 841 S.W.2d 336, 339 (Tenn. Crim. App. 1992). Agent Ainsworth explained to the trial court that he knew the informant for many years and that, in that time, she never provided wrong information to him. Furthermore, he said that she set up two drug purchases for officers and that she made between five and eight drug purchases for the Drug Task Force. The trial court found that, based upon Agent Ainsworth's testimony, the informant was credible, and it was reasonable for Agent Ainsworth to believe that the information provided by the informant was reliable. The evidence does not preponderate against the trial court's findings; therefore, this prong of the test is satisfied.

To satisfy the "basis of knowledge" prong of the Aguilar-Spinelli test, "facts must be revealed which permit the magistrate to determine whether the informant has a basis for his [or her] information that a certain person had been, was or would be involved in criminal conduct. . . ."[2] Moon, 841 S.W.2d at 338. Tennessee Rule of Criminal Procedure Rule 4(b) states that: "[t]he finding of probable cause shall be based upon evidence, which may be hearsay in whole or in part provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Tenn. R. Crim. P. 4(b). In State v. Raspberry, this Court stated that "[w]hile [Rule 4(b)] applies itself particularly to warrants for arrest, the same principle must be considered to establish probable cause where an arrest has been made without a warrant." State v. Raspberry, 640 S.W.2d 227, 228 (Tenn. Crim. App. 1982). Accordingly, in the case under submission, facts must be revealed at the suppression hearing that permitted Agent Ainsworth to determine whether the informant had a basis of knowledge for her information that Hawks had been, was or would be involved in criminal conduct or Agent Ainsworth must cure any deficiency through independent police corroboration of the informant's statements.

Agent Ainsworth testified that the confidential informant provided him with information told to her by Hawks. He stated that the confidential informant told him that the informant had received a call from Hawks while Hawks was at the Midway bar. Agent Ainsworth explained that, according to the informant, Hawks told her that she, Hawks, was leaving the bar to meet someone at the Poplar Ridge Station to purchase a quarter pound of marijuana. The trial court found that Hawks's statement to the confidential informant was reliable, and that Agent Ainsworth received information from a "reliable informant based upon knowledge–the basis of knowledge is personal . . . to the informant . . . ." The evidence does not preponderate against the trial court's findings.

Even it we were to conclude that the confidential informant's basis of knowledge was deficient, we find that there is sufficient independent police corroboration to cure any deficiency.

---

[2] In Moon, the Court applied this standard to a magistrate who must determine whether sufficient probable cause exists to issue a search warrant.

The critical issue regarding corroborating information is not whether the activities observed by the officers were innocent or suspicious, but whether the "corroboration of the informer's story [gives] rise to an inference that the informant [is] credible and that he had obtained the information in a reliable manner." Id. at 434. Although courts have struggled with the question of how much independent police corroboration is necessary, corroboration of more than "a few minor elements of the story" are required, "especially if those elements involve non-suspect behavior." United States v. Bush, 647 F.2d 357, 363 (3rd Cir. 1981). However, "the police need not corroborate every detail of an informant's report to establish sufficient evidence of his veracity." Id. This Court speculated that if police respond to "an informant's information which is deficient under both the basis of knowledge and veracity prongs of the Jacumin probable cause test," courts may require greater corroboration than if the information is only deficient under one of the prongs. Marshall, 870 S.W.2d at 539.

Agent Ainsworth stated that the confidential informant's information was corroborated by himself and several other officers. He testified that he received information from a reliable confidential informant that "Hawks was at Midway in Trade and she was going to meet . . . a subject at the state line at Poplar Ridge Station where she was going to purchase a quarter pound of pot . . . ." He explained that based on the informant's information, he and several other police officers drove towards the Midway bar and as they approached the bar, he saw Hawks's Toyota pickup truck leaving the bar. Agent Ainsworth stated that they followed Hawks from the Midway bar to Poplar Ridge Station, which was where the informant told Agent Ainsworth Hawks was purchasing the marijuana. The agent then testified that "[n]o sooner than [they] . . . parked, here come a black Nissan pickup which [he] recognized as [previously] being at [Hawks's] residence. . . ." Agent Ainsworth explained that the pickup truck went past them and traveled to Poplar Ridge Station, where Hawks was located. He stated that after waiting a few minutes, he drove up behind the vehicles to investigate. Any doubts that Agent Ainsworth had concerning the confidential informant's reliability were erased at this time. Hawks had done exactly what the confidential informant had told him she would.

Moreover, Agent Ainsworth testified that, at the time he received the information from the confidential informant, he already knew a great deal about both Hawks and the Defendant. He stated that he "had a long-term investigation on [Hawks] where [he] had previously purchased drugs from her and also done search warrants on her residence." Agent Ainsworth also explained that he had seen the Defendant's vehicle parked at Hawks's residence on at least one occasion, at night, during the month leading up to the arrest. Agent Ainsworth testified that he knew that Hawks had a boyfriend who was not the Defendant. Agent Ainsworth stated that he tried "to purchase one pound of marijuana from [the Defendant] where Ms. Hawks [worked] . . . . The deal fell through. That's where I got my knowledge–[the Sheriff's Office of Watuga County, North Carolina] advised us–I received a picture from North Carolina and got a photograph of [the Defendant]." Agent Ainsworth stated that he received a photograph of the Defendant from the North Carolina authorities and a warning from Officer Danner that the Defendant "routinely carried a firearm–when he carried drugs." This independent police corroboration sufficiently corroborated the confidential informant's information.

Having satisfied both prongs of the Aguilar-Spinelli test, the information told to Agent Ainsworth by the informant provided him with probable cause to arrest Hawks when he saw her at Poplar Ridge Station. Officers are permitted to make a warrantless arrest when they have probable cause to believe that the individual has committed or is committing a felony. Tenn. Code Ann. § 40-7-103(a) (2003). In the case under submission, the trial court found that the police officers had probable cause to believe that a crime had been or was being committed in the pickup truck. We find that the evidence does not preponderate against the trial court's finding. Hawks was in the vehicle with the Defendant, and there was sufficient evidence to arrest Hawks for purchasing marijuana. It was a reasonable and legitimate inference that if Hawks was at Poplar Ridge Station to purchase drugs, that the person whose vehicle she was in was the person selling her the drugs. Therefore, at that point in time, the police officers had probable cause to believe the Defendant was committing a felony; there was probable cause to arrest the Defendant based upon facts and circumstances within their knowledge to believe that the Defendant was selling drugs to Hawks. Accordingly, the trial court did not err by denying the Defendant's motion to suppress.

## IV. CONCLUSION

In accordance with the foregoing authorities and reasoning, we AFFIRM the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE