# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 20, 2010 Session

## STATE OF TENNESSEE v. CONNELL NORTON

**Direct Appeal from the Circuit Court for Franklin County**
**No. 18420      Buddy D. Perry, Judge**

---

**No. M2009-01359-CCA-R3-CD - Filed November 24, 2010**

---

A Franklin County grand jury indicted the Defendant, Connell Norton, for one count of possession of a Schedule VI controlled substance with the intent to sell or deliver and one count of possession of drug paraphernalia. The Defendant moved to suppress the evidence against him, which was seized during a search of his home following a warrantless entry. The trial court denied the motion to suppress. The Defendant pled guilty to possession of a Schedule VI controlled substance with the intent to sell or deliver, but reserved a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2) as to whether the search of his home was lawful. Because the trial court failed to state in the record the factual findings and conclusions of law supporting the denial of the motion to suppress, we are precluded from reviewing the issue before us. Therefore, we remand the case for the trial court to enter an order stating its factual findings and conclusions of law, and for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

James O. Martin, Nashville, Tennessee (on appeal) and Richard McGee, Nashville, Tennessee (on appeal and at plea hearing), for the Appellant, Connell Norton.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Benjamin A. Ball, Assistant Attorney General; J. Michael Taylor, District Attorney General; William Copeland, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

# I. Facts
## A. Background

This case arises from the warrantless search of the Defendant's home by Franklin County law officers that ultimately led to the recovery of marijuana. A Franklin County grand jury indicted the Defendant for possession of marijuana, a Schedule VI controlled substance, with intent to sell or deliver and possession of drug paraphernalia. The Defendant then moved to suppress the evidence seized during the search of his home. The trial court held a suppression hearing to dispose of the Defendant's motion.

## B. Suppression Hearing

At the suppression hearing, Seth Isbell, a Franklin County Sheriff's Department officer, testified that he and another officer went to the Defendant's residence based upon the Defendant's report of a theft. When they arrived, a woman was on the porch and invited them in. Officer Isbell described the porch as "enclosed with the doorway almost directly in front of the doorway to the residence." Officer Isbell said that, because the porch door as well as the door to the Defendant's house were open, he could see the Defendant seated in the house. The police officer recalled that, once he was on the porch, the Defendant invited the officers into his house, although Officer Isbell could not remember the Defendant's exact words. The officers proceeded into the home and began taking information for the theft report.

Officer Isbell testified that he has been in law enforcement for ten years and based on this experience is familiar with the look and smell of marijuana. As the officers were preparing to leave, Officer Isbell asked the Defendant about what appeared to be marijuana sitting on a tray on the floor in between the officer and the Defendant. Officer Isbell then asked for consent to search the house and the Defendant said that he would first like to call his brother. Based upon the Defendant's conversation with his brother, he declined the officer's request to search and Officer Isbell sought a search warrant.

After securing a search warrant, Officer Isbell returned to the house and found a "large amount" of marijuana in several places in the kitchen and marijuana in the Defendant's vehicle. The officers also found drug paraphernalia. Officer Isbell said that he did not arrest the Defendant that day but instead presented the information to the grand jury.

On cross-examination, Officer Isbell testified that he instructed two officers to remain at the Defendant's house while he went to get a search warrant and that the Defendant remained at the house during the entire incident. Officer Isbell said that he did not know the woman who invited the officers onto the porch, and he did not inquire as to her relationship with the Defendant or to the house. The officer said he did not see any contraband or smell any marijuana when he entered the porch. The officer agreed that the only reason he sought

a search warrant was that he observed marijuana while inside the Defendant's house.

Curtis Francis, a deputy with the Franklin County Sheriff's Department, went to the Defendant's house with Sergeant Isbell. He described their arrival and entry into the Defendant's house:

> We got out of the car, walked up the steps. A lady, a female later identified as his nurse told us to enter the house or enter the porch. Once we c[a]me up on [the] porch you could see straight through, [the Defendant] was sitting there on a chair and told us to come on in the house.

Officer Francis said that upon entering the house he took information from the Defendant on the theft the Defendant had reported. According to Officer Francis, the Defendant never tried to prevent the officers from entering his house and only asked them to leave when they noticed the marijuana on his floor.

On cross-examination, Officer Francis testified that he was in full police gear when he and Officer Isbell drove to the Defendant's house in a Sheriff's Department cruiser. Officer Francis did not fill out a police report regarding the investigation in this case. The officer acknowledged that he did not know who the woman was that let them through a storm door onto the porch and did not seek her identity before entering the porch. The officer could see the Defendant once he entered the porch area, and the Defendant made a hand gesture and told the officers to come into the house. Officer Francis did not know the Defendant but entered the house after the invitation and began gathering information for the police report. Officer Francis testified that he remained at the house while Sergeant Isbell went to get a search warrant for the Defendant's house. During this time, Officer Francis informed the Defendant he was not free to leave.

Carol Archey testified that she was not living with the Defendant at the time of this incident and described their relationship as "really good friends." She explained that she was at the Defendant's house because she was helping him take care of an injury he had sustained. Archey testified that she did not have a key to the Defendant's house or know the alarm code for the house. Archey said that the Defendant had a security system in the house that included a video monitor.

Archey testified that the Defendant called police to file a theft complaint because someone had broken into his boat dock. Archey was present during this phone call and said that the Defendant requested that police be sent to his house. Archey recalled that she was standing in the living room when the police officers arrived and knocked on the door. She opened the door and invited them up on the porch. When the Defendant saw the police officers, he told them to "have a seat."

On cross-examination, Archey testified that she first saw the police officers arrive on the Defendant's video monitor. She stood up and went to the storm door on the porch explaining, "I knew why they were there, so I told them to come on in." Archey testified that, after letting the officers onto the porch, they followed her into the house. After the officers had followed Archey into the house, the Defendant directed the officers to have a seat. Archey said that the officers never asked the Defendant for permission to enter.

On cross-examination, Archey agreed that in previous conversations with the State she had said that the Defendant said, "Come on in boys, have a seat."

Todd Hindman, a Franklin County Sheriff's Department deputy, testified that he assisted Sergeant Isbell in executing a search warrant at the Defendant's house. Officer Hindman recalled that, as he entered the residence, the Defendant was seated in the living room and was on the phone. The officer heard the Defendant say to the person on the other end of the line, "yeah, I let 'em in." On cross-examination, Officer Hindman testified that he did not fill out a report on this statement that he overheard.

Following this testimony, the trial court ruled from the bench and concluded, "I don't need any argument, I'm denying the motion to suppress." The trial court subsequently issued a written order denying the Defendant's motion to suppress the evidence which stated, "After hearing the testimony of witnesses in open Court, arguments of counsel, and considering the record as a whole, the Court is of the opinion that said motion is not well taken and is therefore overruled." The Defendant then pled guilty to the felony drug charge, but reserved a certified question of law as to the propriety of the seizure. The Defendant was sentenced to serve two years and fined $2000. The trial court suspended the two-year sentence and ordered the Defendant serve the sentence on supervised probation. Further, the Defendant was ordered to complete 100 hours of community service.

## II. Analysis
### A. Certified Question of Law

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive. An appeal lies from any judgement of conviction upon a plea of guilty if the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved with the consent of the State and the court the right to appeal a certified question of law that is dispositive of the case. Tenn. R. Crim. P. 37(b)(2); *see State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). Further, the following are prerequisites for an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

(i) The judgment of conviction, or other document to which such judgment

refers that is filed before the notice of appeal, contains a statement of the certified question of law reserved by the defendant for appellate review;

(ii) The question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

(iii) The judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial judge; and

(iv) The judgment or document reflects that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

The Defendant's issue on appeal meets these requirements. He pled guilty, and the judgment form along with its addendum listed the question the Defendant maintains on appeal:

Whether law enforcement's initial warrantless entry of the defendant's home was unlawful in violation of the 4th Amendment to the United States Constitution and Article One, Section Seven of the Tennessee Constitution as the State did not establish any exception to the warrant requirement thus requiring suppression of the evidence discovered pursuant to the warrantless entry as well as the evidence discovered as a result of the subsequent search warrant, the issuance of which was based on the evidence seized during the warrantless entry as well as material misrepresentation of facts in the affidavit in violation of Rule 41 of the Tennessee Rules of Criminal Procedure.

We agree that the question attached to the Defendant's plea agreement is dispositive of the case. Thus, we conclude that the issue is properly before this Court.

**B. Suppression Issue**

The Defendant contends that the officers' initial warrantless entry of the Defendant's home was unlawful and that, thus, the evidence discovered during the initial warrantless entry must be suppressed. Further, the Defendant contends that the illegally discovered evidence was the basis for the subsequent search warrant, and, thus, the evidence discovered and seized pursuant to the same warrant must be suppressed. According to *State v. Odom*, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." 928 S.W.2d 18, 23 (Tenn. 1996). Additionally, the prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression

hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Id.* Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id.* Despite the deference to the trial court for factual issues, this Court reviews the trial court's application of the law to the facts de novo, without any deference to the trial court's determinations. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001).

The trial court did not state the essential findings of fact on the record. *See* Tenn. R. Crim. P. 12 (e). Thus, we are unable to conduct an analysis of this issue based upon the record before us. *See State v. Raspberry*, 640 S.W.2d 227, 229 (Tenn. Crim. App. 1982); *State v. Alonzo Gentry*, C.C.A. No. 02C01-9708-CC-00335, 1998 WL 351228, at *2 (Tenn. Crim App., Jackson, July 2, 1998). Specifically, the trial court did not make findings about the police officers' entry, whether the porch constituted the threshold of the dwelling, the credibility of the testimony about whether the Defendant invited the officers into his house, and the role of Archey in allowing the officers to enter, which are necessary for our review of this case. Therefore, we are constrained to remand this case to the trial judge for specific factual findings and legal conclusions. It is the function of the trial court to judge the credibility of witnesses, to weigh the evidence, and to resolve factual issues. *See State v. Cabbage*, 571 S.W.2d 832 (Tenn. 1978). Thus, the order of the trial court denying the motion to suppress is vacated and the matter is remanded for the trial court to make specific factual findings and conclusions of law.

### III. Conclusion

Based upon the foregoing and the record as a whole, we remand the case for the trial court to enter an order stating its factual findings and conclusions of law and for further proceedings consistent with this opinion

_____
ROBERT W. WEDEMEYER, JUDGE